Donald WASHINGTON, Appellant,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellee.

No. 97–7227.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 9, 1998.

Decided Dec. 1, 1998.

Barbara B. Hutchinson argued the cause and filed the briefs for appellant.

Nancy F. Langworthy argued the cause for appellee. With her on the brief were Robert L. Polk and Robert J. Kniaz.

Before: EDWARDS, Chief Judge, ROGERS and GARLAND, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

This case involves the timeliness of a discrimination claim filed by Donald Washington against the Washington Metropolitan Area Transit Authority("WMATA"). Washington raises various arguments as to why this court should permit him to proceed on his claim, notwithstanding his failure to satisfy a clear filing requirement with the Equal Employment Opportunity Commission ("EEOC"). We find Washington's contentions to be without merit. Accordingly, we affirm the District Court's grant of summary judgment in favor of WMATA.

## I. BACKGROUND

On March 31, 1975, Washington began his employment with WMATA. He was hired for the position of Mechanical–Electrical Repairman and was subsequently promoted to a supervisory position. According to Washington, however, he began to experience discriminatory treatment by WMATA beginning in 1990. *See* Complaint ¶ 6, *reprinted in* Joint Appendix ("J.A.") 6. This alleged treatment consisted of, *inter alia,* unfair promotion practices, "bogus" unfavorable performance evaluations, and temporary re-assignment. *See id.* ¶¶ 6–9, 11–13, *reprinted in* J.A. 6–8. The treatment allegedly worsened after Washington complained of discrimination to his supervisors. *See* Affidavit of Donald Washington, *reprinted in* J.A. 74. On August 8, 1995, Washington was demoted to a non-supervisory position.

On September 5, 1995, Washington filed an internal complaint of discrimination with WMATA's Office of Civil Rights ("OCR"), claiming age and race discrimination and retaliation in the terms and conditions of his employment, including his demotion. *See* J.A. 84–88. On April 12, 1996, WMATA issued an internal decision, finding that there was "insufficient evidence to support a charge of discrimination." Letter from WMATA to Washington (April 12, 1996), *reprinted in* J.A. 89. While noting that the decision was "final within WMATA," the OCR's letter informed Washington that he could file a complaint with the EEOC "no later than 180 days from the date of the last alleged incident." *Id.* Five months later, on September 12, 1996, Washington filed a race discrimination charge against WMATA with the EEOC. *See* J.A. 34. He amended this charge on January 6, 1997 to include claims of age discrimination and retaliation, as he had originally alleged to the OCR. *See id.* In April 1997, Washington requested and received a right-to-sue notice from the EEOC.

On April 11, 1997, Washington filed suit in District Court, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17. On September 19, 1997, WMATA filed a Motion to Dismiss and/or for Summary Judgment, arguing that: (1) because the last-alleged

discriminatory act—the demotion—occurred more than 180 days before Washington filed his charge with the EEOC, his complaint was time-barred under 29 U.S.C. § 626(d)(1) and 42 U.S.C. § 2000e–5(e)(1), *see* J.A. 24–27; and (2) the court nevertheless lacked jurisdiction over the ADEA claim because of WMATA's Eleventh Amendment immunity. *See id.* at 27–32. Without reaching the sovereign immunity issue, the District Court granted WMATA's motion, concluding that Washington's claim was untimely, and that equitable tolling was not appropriate. *See Washington v. WMATA,* No. 97–0726, Memorandum and Order (D.D.C. Nov. 17, 1997), *reprinted in* J.A. 1–3.

## II. ANALYSIS

Before suing under either the ADEA or Title VII, an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident. *See* 29 U.S.C. § 626(d)(1) (1994); 42 U.S.C. § 2000e–5(e)(1) (1994); *Currier v. Radio Free Europe/Radio Liberty, Inc.,* 159 F.3d 1363 (D.C.Cir.1998). Washington, however, did not file his charge with the EEOC until more than a year after his allegedly discriminatory demotion.

■ Washington's first argument is that his September 5, 1995 internal complaint should be "considered filed with the EEOC on the date it was filed with WMATA." Brief of Appellant at 4. For this argument, Washington relies on EEOC regulations entitled, "Procedures for Complaints of Employment Discrimination Filed Against Recipients of Federal Financial Assistance," *see* 29 C.F.R. pt. 1691 (1998), which provide, in pertinent part, that:

> A complaint of employment discrimination filed with an agency, which is transferred or referred to EEOC under this regulation, shall be deemed a charge received by EEOC. For all purposes under title VII ..., the date such a complaint was received by an agency shall be deemed the date it was received by EEOC.

29 C.F.R. § 1691.6(a). WMATA, however, is not an "agency" within the meaning of this provision. "Agency," for these purposes, means "any Federal department or agency which extends Federal financial assistance subject to any civil rights provision(s) to which this regulation applies." 29 C.F.R. § 1691.13(a). This definition clearly excludes WMATA, which is neither a federal department, nor an agency that extends federal financial assistance. Thus, WMATA's internal procedures offer a separate forum for pursuing discrimination complaints, which does not displace the ADEA or Title VII filing requirements.

■ Washington next argues that, even if he did not satisfy the filing requirement, the time for filing should be equitably tolled on the ground that WMATA touted its internal procedure as the appropriate forum for resolving discrimination complaints, *see* Brief of Appellant at 10, 15, and thereby "lulled [him] ... into presuming that he had met the requirements of the law." *Id.* at 11. Although Washington asserts equitable tolling, under this circuit's case law, his claim may be more accurately characterized as one for equitable estoppel. *See Currier,* 159 F.3d at 1368. In either event, his claim fails. Washington is correct that the administrative filing requirement is "not a jurisdictional prerequisite to suit in federal court," and is, therefore, subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Washington is not entitled to tolling on either theory in this case, however, for he has not adequately explained his failure to timely exhaust.

■ In *Irwin v. Department of Veterans Affairs,* the Supreme Court noted:

> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (footnotes omitted). Thus, equita-

ble principles favor tolling where, for example, a defendant engaged in "affirmative misconduct," *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984), or "misled [a plaintiff] about the running of a limitations period." *Bowden v. United States,* 106 F.3d 433, 438 (D.C.Cir.1997).

Here, Washington has demonstrated no affirmative misconduct on the part of WMATA. Nor has he shown that WMATA's decision letter disposing of his claim was misleading. Indeed, because 180 days had already expired between Washington's demotion and the date the letter was issued, Washington could not have relied on the letter to his detriment. Moreover, the letter's reference to the filing deadline was not literally incorrect, for it could have applied to an instance of discriminatory conduct arising after Washington's demotion. Finally, Washington, who was represented by counsel during at least part of the filing period, failed to demonstrate diligence; he filed his charge with the EEOC five months after receiving WMATA's decision letter and over a year after his demotion. "The court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances," *Smith-Haynie v. District of Columbia,* 155 F.3d 575, 579–80 (D.C.Cir.1998) (quotation omitted), and does "not extend to what is at best a garden variety claim of excusable neglect." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453. Thus, we find that equitable principles do not warrant tolling in this case.

Because our resolution of the timeliness issue disposes of Washington's ADEA and Title VII claims, we need not reach the question of whether his ADEA claim is nonetheless barred by the Eleventh Amendment. We note, however, that this issue is currently under advisement by this court in *Jones v. WMATA,* No. 97–7186 (D.C.Cir. argued Sept. 9, 1998).

### III. CONCLUSION

For the foregoing reasons, we affirm the District Court's grant of summary judgment in favor of WMATA.

*So ordered.*